[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 8, 2009
THOMAS K. KAHN
CLERK

No. 08-11021

D.C. Docket No. 07-22816-CV-PCH

GENERAL MANUEL ANTONIO NORIEGA,

Petitioner–Appellant,

versus

GEORGE PASTRANA,
Warden, FCI Miami,
HILLARY CLINTON,
Secretary of State
United States Department of State,

Respondents–Appellees.

Appeal from the United States District Court
for the Southern District of Florida

(April 8, 2009)

Before DUBINA and CARNES, Circuit Judges, and RESTANI,* Judge.

---

\* Honorable Jane A. Restani, Chief Judge of the United States Court of International
Trade, sitting by designation.

RESTANI, Judge:

Appellant General Manuel Antonio Noriega appeals the decision of the United States District Court for the Southern District of Florida denying his petition for writ of habeas corpus. The district court determined that the Geneva Convention Relative to the Treatment of Prisoners of War, Aug. 12, 1949, 6 U.S.T. 3316, 75 U.N.T.S. 135 ("Third Geneva Convention" or "Convention"), does not foreclose the extradition of prisoners of war and that the United States had sufficiently complied with its obligations under the Convention. We affirm and hold that § 5 of the Military Commissions Act of 2006 ("MCA"), Pub. L. No. 109-366, § 5(a), 120 Stat. 2600, 2631, note following 28 U.S.C. § 2241 (2006), precludes Noriega from invoking the Geneva Convention as a source of rights in a habeas proceeding and therefore deny Noriega's habeas petition. We also conclude that extradition would not violate the Convention.

## BACKGROUND

In February 1988, a federal grand jury in the Southern District of Florida indicted Noriega on drug-related conspiracy charges. In April 1992, Noriega was convicted for RICO and RICO conspiracy (18 U.S.C. § 1962(c) and (d)), conspiracy to import and distribute cocaine (21 U.S.C. § 963), distribution of cocaine (21 U.S.C. § 959), manufacture of cocaine (21 U.S.C. § 959), conspiracy

to manufacture, distribute, and import cocaine (21 U.S.C. § 963), and unlawful travel to promote a business enterprise involving cocaine (18 U.S.C. § 1952(a)(3)). Noriega was sentenced to concurrent terms of twenty years' imprisonment, followed by concurrent terms of fifteen years' imprisonment, a consecutive term of five years' imprisonment, and concurrent terms of three years' special parole. Noriega was designated a prisoner of war and accorded the benefits conferred on prisoners of war by the Third Geneva Convention.[1] The district court reduced Noriega's sentence to thirty years' imprisonment on March 4, 1999, and Noriega was scheduled to be released on parole on September 9, 2007.

At the request of the French government, the United States filed a complaint on July 17, 2007, for the extradition of Noriega, pursuant to an extradition treaty with France.[2] On July 23, 2007, Noriega filed a petition in the related criminal

---

[1] The district court determined that Noriega was a prisoner of war under the Third Geneva Convention in response to Noriega's concerns about the type of care he would receive while in custody. United States v. Noriega, 808 F. Supp. 791, 793–96 (S.D. Fla. 1992) (Hoeveler, J.) ("Noriega I"). Specifically, the district court found that the hostilities in Panama constituted an "armed conflict" within the meaning of article 2, that Noriega was a member of the armed forces of a party to the conflict under article 4, and that the district court was a "competent tribunal" to determine his prisoner of war status under article 5 of the Third Geneva Convention. Id. This determination was not appealed.

[2] Noriega was convicted in absentia in France of using the proceeds of illegal drug trafficking to engage in financial transactions. Noriega will have the opportunity to challenge this conviction and seek a new trial upon his surrender to France.

3

case for a writ of habeas corpus under 28 U.S.C. § 2255,[3] alleging that the extradition violated his rights under the Third Geneva Convention. The district court denied his petition on August 24, 2007, for lack of jurisdiction, finding that because Noriega was not challenging his sentence, § 2255 did not apply. United States v. Noriega, No. 88-0079-CR, 2007 WL 2947572, at *1 (S.D. Fla. Aug. 24, 2007) (Hoeveler, J.) ("Noriega II"). Nevertheless, because of the imminency of the extradition hearing, Noriega's planned release, and the expectation that Noriega would refile the petition correctly under 28 U.S.C. § 2241,[4] the district court reviewed the petition on the merits. Id. The district court reasoned that even if it had jurisdiction, it would still deny the petition because the United States had satisfied its international obligations under the Third Geneva Convention. Id. at *2–5. An extradition hearing was held on August 28, 2007, and a Certificate of Extraditability was issued on August 29, 2007.

On September 5, 2007, in the related criminal case, Noriega filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, alleging that the United

_____

[3] A prisoner's "collateral attack[] on the validity of a federal sentence must be brought under § 2255," Darby v. Hawk-Sawyer, 405 F.3d 942, 944 (11th Cir. 2005), by "mov[ing] the court which imposed the sentence to vacate, set aside or correct the sentence," 28 U.S.C. § 2255(a).

[4] Under 28 U.S.C. § 2241, "[w]rits of habeas corpus may be granted" to a prisoner "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(a), (c)(3).

4

States had not complied with article 12 of the Third Geneva Convention by satisfying itself of France's willingness and ability to consider Noriega a prisoner of war and apply the Convention. On September 7, 2007, the district court again dismissed the habeas petition for lack of jurisdiction, because Noriega had failed to file his petition in a new civil action. United States v. Noriega, No. 88-0079-CR, 2007 WL 2947981, at *1 (S.D. Fla. Sept. 7, 2007) (Hoeveler, J.) ("Noriega III"). The district court intimated that it still would have denied the petition on the merits, because the United States had demonstrated that upon extradition Noriega would be afforded the same benefits he enjoyed in the United States. Id.

Noriega filed the habeas petition that is before us on October 26, 2007. On January 14, 2008, the district court adopted the findings of fact, legal analysis, and conclusions of law set forth in the August 24, 2007, and September 7, 2007, orders and denied the petition. United States v. Noriega, No. 07-CV-22816-PCH, slip op. at 6–7 (S.D. Fla. Jan. 14, 2008) (Huck, J.) ("Noriega IV"). The district court concluded that the Third Geneva Convention did not bar Noriega's extradition to France. Noriega now appeals.[5]

---

[5] On October 5, 2007, this Court dismissed for want of prosecution Noriega's appeal of the September 7, 2007 order denying his § 2241 habeas petition. On February 11, 2008, we granted Noriega's voluntary dismissal of his appeal of the August 24, 2007 order denying his § 2255 habeas petition.

5

**JURISDICTION**

Noriega is in federal custody and has sought habeas corpus relief under 28 U.S.C. § 2241 to challenge his extradition. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253 to review a final order in a habeas proceeding and can therefore decide whether any law prevents Noriega's extradition.

The issues present in Boumediene v. Bush, __ U.S. __, 128 S. Ct. 2229 (2008), concerning the constitutionality of § 7 of the MCA, are not presented by § 5 of the MCA, the provision at issue here, as the parties concede. In Boumediene, the Supreme Court found § 7 of the MCA, which explicitly removed the jurisdiction of courts to consider habeas actions by enemy combatants, to be unconstitutional. Id. at 2242–44, 2275. The Court determined that the petitioners could not be prevented from seeking the writ because of their status as enemy combatants or detention in Guantanamo Bay, and therefore they were entitled to the constitutional privilege of habeas corpus. Id. at 2262. The Court further held that the procedures for reviewing the status of a detainee under the Detainee Treatment Act of 2005, Pub. L. No. 109-148, Div. A, Tit. X, § 1005, 119 Stat 2680, 2740–44, note following 10 U.S.C. § 801 (2005 ed., Supp. V), were not an adequate and effective substitute for the habeas writ. Id. at 2274. Section 5, in contrast, as discussed more fully, infra, at most changes one substantive provision

6

of law upon which a party might rely in seeking habeas relief.  We are not presented with a situation in which potential petitioners are effectively banned from seeking habeas relief because any constitutional rights or claims are made unavailable.

## STANDARD OF REVIEW

On review of a denial of a habeas petition regarding the issuance of a certification of extraditability, we review factual findings for clear error and questions of law de novo.  Kastnerova v. United States, 365 F.3d 980, 984 (11th Cir. 2004).

## DISCUSSION

### I.    Extradition Principles

Extradition is an executive function derived from the President's power to conduct foreign affairs, and the judiciary historically has played a limited role in extradition proceedings.  Martin v. Warden, Atlanta Pen, 993 F.2d 824, 828 & n.6 (11th Cir. 1993); see also Terlinden v. Ames, 184 U.S. 270, 288 (1902) ("[T]he question whether power remains in a foreign state to carry out its treaty obligations is in its nature political and not judicial, and . . . the courts ought not . . . interfere with the conclusions of the political department in that regard.").

The United States' authority to extradite Noriega comes from the United

States' extradition treaty with France. The federal extradition statute generally permits extradition when based on a treaty or convention. See 18 U.S.C. § 3184. Article 1 of the extradition treaty between the United States and France, entitled "Obligation to Extradite," states that "[t]he Contracting States agree to extradite to each other, pursuant to the provisions of this Treaty, persons whom the competent authorities in the Requesting State have charged with or found guilty of an extraditable offense." Extradition Treaty, U.S.-Fr., art. 1, Apr. 23, 1996, S. Treaty Doc. No. 105-13 (2002). The treaty further defines an extraditable offense as one "punished under the laws in both States by deprivation of liberty for a maximum of at least one year or by a more severe penalty." Id. at art. 2(1). The offense of which Noriega has been convicted in absentia in France, which corresponds to money laundering in the United States, undoubtedly falls within the purview of the treaty.[6]

There is no right to appeal extradition certification determinations, see Kastnerova, 365 F.3d at 984 n.4, and collateral review of an extradition determination by means of a petition for writ of habeas corpus is generally limited

---

[6] Noriega was charged with violations under French law of engaging in financial transactions with the proceeds of illegal drug trafficking, in violation of section 415 of the French Customs Code (Law 88-1149 of December 23, 1998, promulgated on December 28, 1988). Money laundering is a felony punishable in the United States by up to twenty years' imprisonment. See 18 U.S.C. § 1956(a). The parties do not dispute the applicability of the Extradition Treaty to either provision.

"to determining 'whether the magistrate had jurisdiction, whether the offense charged is within the treaty and, . . . whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty.'" Martin, 993 F.2d at 828 (quoting Fernandez v. Phillips, 268 U.S. 311, 312 (1925)). The issue of whether the treaty of extradition has no force because another treaty or law prevents its operation is no less a fundamental one than is treaty coverage of the offense charged, and is within the class of reviewable challenges to extradition. See, e.g., Valenzuela v. United States, 286 F.3d 1223, 1229 (11th Cir. 2002) (noting that despite the court's "limited role in extradition proceedings, the judiciary must ensure that the constitutional rights of individuals subject to extradition are observed"); Yapp v. Reno, 26 F.3d 1562, 1565 (11th Cir. 1994) (concluding that the court was still required to interpret a provision of the applicable extradition treaty regardless of the limited scope of habeas corpus review in extradition proceedings); Ahmad v. Wigen, 910 F.2d 1063, 1064–65 (2d Cir. 1990) (adhering to the limited role of habeas corpus in extradition proceedings but still considering whether the government's conduct violated the Constitution or established principles of international law). Noriega has failed to assert any applicable law which would prevent his extradition to France under the Extradition Treaty.

9

We find it unnecessary to resolve the question of whether the Geneva Conventions are self-executing,[7] because it is within Congress' power to change domestic law, even if the law originally arose from a self-executing treaty. See Medellin, 128 S. Ct. at 1359 n.5 ("Whether or not the United States 'undertakes' to comply with a treaty says nothing about what laws it may enact. The United States is always 'at liberty to make . . . such laws as [it] think[s] proper.'" (quoting Todok v. Union State Bank of Harvard, Neb., 281 U.S. 449, 453 (1930))). That is, because "'an Act of Congress . . . is on a full parity with a treaty, . . . when a statute which is subsequent in time is inconsistent with a treaty, the statute to the

---

[7] By "self-executing," we mean "that the treaty has automatic domestic effect as federal law upon ratification." Medellin v. Texas, __ U.S. __, 128 S. Ct. 1346, 1356 n.2 (2008). In Johnson v. Eisentrager, 339 U.S. 763 (1950), the Supreme Court appeared wary of finding the 1929 Convention—the predecessor to the 1949 Conventions—self executing:

> It is . . . the obvious scheme of the Agreement that responsibility for observance and enforcement of these rights is upon political and military authorities. Rights of alien enemies are vindicated under it only through protests and intervention of protecting powers as the rights of our citizens against foreign governments are vindicated only by Presidential intervention.

Id. at 789 n.14. In Hamdan v. Rumsfeld, 548 U.S. 557 (2006), however, the Court referred to this footnote as a "curious statement suggesting that the Court lacked power even to consider the merits of the Geneva Convention argument." Id. at 627. In discussing the adequacy of military commissions the Court did not resolve the issue of whether the Geneva Conventions were self-executing, but rather, found that even if the scheme of the Geneva Conventions "would, absent some other provision of law, preclude [the] invocation of the Convention's provisions as an independent source of law binding the Government's actions and furnishing petitioner with any enforceable right," the rights at issue were "part of the law of war" and made applicable by statute. Id. at 627–28.

extent of conflict renders the treaty null.'" Breard v. Greene, 523 U.S. 371, 376 (1998) (quoting Reid v. Covert, 354 U.S. 1, 18 (1957)) (finding that petitioner's claim for relief based on violations of the Vienna Convention on Consular Relations was subject to later enacted Antiterrorism and Effective Death Penalty Act); see also Medellin, 128 S. Ct. at 1359 n.5 ("Indeed, a later-in-time federal statute supersedes inconsistent treaty provisions."). Thus, as discussed below, while the United States' international obligations under the Geneva Conventions are not altered by the enactment of § 5 of the MCA, Congress has superseded whatever domestic effect the Geneva Conventions may have had in actions such as this.

## II.     Section 5 of the Military Commissions Act

The parties' dispute centers on the extent to which § 5 removes an individual's ability to invoke the Conventions in a civil action against the United States, including a habeas proceeding. Section 5 of the MCA provides:

> No person may invoke the Geneva Conventions or any protocols thereto in any habeas corpus or other civil action or proceeding to which the United States, or . . . agent of the United States is a party as a source of rights in any court of the United States or its States or territories.

MCA, § 5(a).

Noriega maintains that while under § 5 he cannot invoke the Third Geneva

11

Convention as a source of individual rights in a judicial proceeding, "his right to enforce the provisions of the Geneva Convention against the Secretary of State, the Bureau of Prisons, or the Department of Justice [is] in no way abrogated." (Appellant's Reply Br. 15.)  Thus, Noriega argues that article 118 of the Third Geneva Convention mandates that he be immediately repatriated to Panama, as his term of imprisonment in the United States is complete.  See Third Geneva Convention art. 118 ("Prisoners of war shall be released and repatriated without delay after the cessation of active hostilities.").  The Government maintains that § 5(a) of the MCA precludes invocation of the Third Geneva Convention in this proceeding, as § 5(a) "codified the principle that the Geneva Conventions [are] not judicially enforceable by private parties," and that regardless, the Third Geneva Convention authorizes his continued detention pending his extradition for criminal proceedings in France.  (Appellees' Br. 14 n.6, 15.)

Despite Noriega's arguments to the contrary, it appears that Noriega is invoking the Third Geneva Convention as a source of rights—the alleged right to immediate repatriation under article 118.  While the legal effect of § 5 has not been widely discussed, the plain language of § 5 prohibits exactly this type of

action.[8]  The district court appears to have read § 5 similarly, noting that § 5 "attempts to remove entirely the protections of the Convention from any person, even a citizen of the United States, in any American courtroom whenever the United States is involved."  Noriega II, 2007 WL 2947572, at *4.  The Court of Appeals for the District of Columbia Circuit has also suggested that the language of § 5 is unambiguous.  See Boumediene v. Bush, 476 F.3d 981, 988 n.5 (D.C. Cir. 2007) (concluding that "[s]ection 7 [of the MCA] is unambiguous, as is section 5(a)"), rev'd __ U.S. __, 128 S. Ct. 2229 (2008) (holding that § 7 unambiguously eliminates habeas jurisdiction but is unconstitutional).

These readings of § 5(a) are consonant with the MCA's legislative history, which further suggests that the express language of § 5 was understood to preclude individuals from invoking the Geneva Conventions as a source of rights. See, e.g., H.R. Rep. No. 109-731 (2006) ("Section 5 of the MCA clarifies that the Geneva Conventions are not an enforceable source of rights in any habeas corpus or other civil action or proceeding by an individual in U.S. courts."); H.R. Rep. No. 109-664(II) (2006) (noting that the section "would prohibit any court from treating the Geneva Conventions as a source of rights, directly or indirectly,

---

[8] The title of § 5, "Treaty Obligations Not Establishing Grounds for Certain Claims," indicates that the section clarifies or changes the domestic effect of the Geneva Conventions.

making clear that the Geneva Conventions are not judicially enforceable in any court of the United States"); 152 Cong. Rec. S10354-02, S10400 (daily ed. Sept. 28, 2006) (statement of Sen. Kennedy) ("[T]he bill expressly states that the Geneva Conventions cannot be relied upon in any U.S. court as a source of rights."); id. at S10414 (statement of Sen. McCain) ("[This legislation] would eliminate any private right of action against our personnel based on a violation of the Geneva Conventions.").

Accordingly, the plain language of § 5 of the MCA, which is clearly supported by its legislative history, precludes Noriega's Geneva Convention claims. As the Geneva Convention is Noriega's only substantive basis for relief he has failed to state a claim upon which habeas relief could be granted.

## III.    The Third Geneva Convention

Nevertheless, assuming arguendo that the Third Geneva Convention is self-executing and that § 5 of the MCA does not preclude Noriega's claim, we agree with the district court that the Third Geneva Convention does not prevent Noriega's extradition to France and that the United States has fully complied with its obligations under the Convention.

Articles 118 and 119 of the Third Geneva Convention set forth the permissible duration for the detention of prisoners of war. Article 118 provides, in

14

pertinent part, that "[p]risoners of war shall be released and repatriated without delay after the cessation of active hostilities." Third Geneva Convention art. 118. Article 119 further qualifies that "[p]risoners of war against whom criminal proceedings for an indictable offence are pending may be detained until the end of such proceedings, and, if necessary, until the completion of the punishment. The same shall apply to prisoners of war already convicted for an indictable offence." Id. at art. 119. As a result of Noriega's conviction in the United States, article 119 authorized the United States to prolong his detention for the duration of his sentence—beyond the cessation of hostilities between the United States and Panama. Nowhere, however, is it suggested that a prisoner of war may not be extradited from one party to the Convention to face criminal charges in another. Nor do the stated purposes of articles 118 and 119, as reflected by their commentary, preclude detention in these circumstances: article 118 is intended to prohibit "prolong[ed] war captivity," while article 119 unambiguously reflects the intention of the drafters to permit detention of prisoners of war subject to criminal proceedings. 3 Int'l Comm. of Red Cross, Commentary: Geneva Convention Relative to the Treatment of Prisoners of War 541, 556 (J. Pictet ed. 1960).

Article 12 further supports the principle that repatriation is not automatic. Article 12 provides that "[p]risoners of war may only be transferred by the

15

Detaining Power to a Power which is a party to the Convention and after the Detaining Power has satisfied itself of the willingness and ability of such transferee Power to apply the Convention." Third Geneva Convention art. 12. As France and the United States are both parties to the Third Geneva Convention, and "the United States sought and obtained from the Republic of France specific information regarding all of the rights that the defendant will be guaranteed by France upon his extradition," Noriega III, 2007 WL 2947981, at *1, these conditions have been satisfied.[9] The text of article 12 imposes no further limitations on the ability to extradite prisoners of war, and nothing in article 12 implies that a contracting party cannot abide by a valid extradition treaty and extradite a prisoner of war to another contracting party simply because the person is a prisoner of war.

Noriega maintains, however, that the omission of the term "extradition" in article 12 demonstrates that extradition is not permitted under the article, and that the district court erred in looking to article 45 of the Geneva Convention Relative to the Protection of Civilian Persons in Time of War, Aug. 12, 1949, 6 U.S.T.

---

[9] The United States did not ask France to declare Noriega a prisoner of war because of the risk that France would interpret the Geneva Conventions differently from the interpretation of the United States. Id. Instead, the United States confirmed that France would afford Noriega the same benefits he has enjoyed during his confinement in the United States. Id.

16

3516, 75 U.N.T.S. 287 ("Fourth Geneva Convention"), to define the term "transfer" as used in article 12 of the Third Geneva Convention. While article 12 of the Third Geneva Convention is silent as to extradition, article 45 of the Fourth Geneva Convention, which parallels article 12 and provides for the transfer of civilians between parties to the Convention, specifically notes that nothing in this article "constitute[s] an obstacle to the extradition, in pursuance of extradition treaties concluded before the outbreak of hostilities, of protected persons accused of offences against ordinary criminal law." Fourth Geneva Convention art. 45. The district court noted the commentary's definition of the term "transfer" as used in article 45 as "internment in the territory of another Power, repatriation, the returning of protected persons to their country of residence or their extradition." Noriega II, 2007 WL 2947572, at *2 (quoting 4 Int'l Comm. of Red Cross, Commentary: Geneva Convention Relative to the Protection of Civilian Persons in Time of War 266 (J. Pictet ed. 1958)). We agree with the district court that while the purposes behind the Third and Fourth Geneva Conventions may be different, it is still "compelling that the convening parties expressed an understanding of the term 'transfer' which included extradition." Noriega II, 2007 WL 2947572, at *2. To conclude otherwise would mean that a country would be obligated to extradite a civilian, but not a prisoner of war, when they are facing identical criminal

charges.  We are hesitant to imply such an inconsistent result, particularly when both articles permit the transfer of prisoners of war or civilians under the same limited restraints.[10]

Accordingly, should any doubt exist as to the principal holding here, Noriega's habeas petition would also be denied because extradition would not violate Noriega's rights under the Third Geneva Convention.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[10] Further, nothing in the Convention indicates that by obligating contracting parties to prosecute or extradite war criminals under article 129, contracting parties cannot also comply with their preexisting obligations to extradite individuals accused of other criminal charges under valid extradition treaties with other countries.  See Third Geneva Convention art. 129.  As Noriega is not alleged to have committed grave breaches of the Third Geneva Convention, article 129 is inapplicable here.