[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-12510
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 16, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 09-00040-CV-J-25-TEM

MOMO PAJKANOVIC,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 16, 2009)

Before BLACK, MARCUS and ANDERSON, Circuit Judges.

PER CURIAM:

Momo Pajkanovic, a native and citizen of Bosnia and Herzegovina, appeals,

through counsel, the denial of his 28 U.S.C. § 2241 petition for a writ of habeas

corpus, challenging a magistrate judge's issuance of a certificate of extraditability

pursuant to 18 U.S.C. § 3184. The magistrate judge based the certificate of extraditability on Pajkanovic's commission of an aggravated robbery in Bosnia and Herzegovina, which the magistrate judge found was an extraditable offense under the Treaty Between the United States and Servia for the Mutual Extradition of Fugitives from Justice, U.S.-Yugoslavia, May 17, 1902, 32 Stat. 1890 (the "Treaty"). On appeal, Pajkanovic argues that his aggravated-robbery conviction was not covered by the Treaty because: (1) it qualified as a political offense; and (2) the statute of limitations had run under the laws of Bosnia and Herzegovina. After thorough review, we affirm.

"On review of a denial of a habeas petition regarding the issuance of a certification of extraditability, we review factual findings for clear error and questions of law de novo." Noriega v. Pastrana, 564 F.3d 1290, 1294 (11th Cir. 2009), petition for cert. filed, (U.S. July 7, 2009) (No. 09-35). "Treaty interpretation presents a question of law, subject to de novo review." Yapp v. Reno, 26 F.3d 1562, 1565 (11th Cir. 1994).

Section 3184 of Title 18 of the United States Code generally permits extradition when provided for by a treaty or convention. See Noriega, 564 F.3d at 1295; 18 U.S.C. § 3184. "Extradition is an executive function derived from the President's power to conduct foreign affairs, and the judiciary historically has

2

played a limited role in extradition proceedings." Noriega, 564 F.3d at 1294. An individual has no right to appeal extradition certification determinations, and collateral review through a petition for a writ of habeas corpus generally is "limited to determining whether the magistrate had jurisdiction, whether the offense charged is within the treaty and, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty." Id. at 1295 (quotation and ellipsis omitted). In this case, Pajkanovic argues only that his offense did not fall within the Treaty because an exception applied.

> After the courts have completed their limited inquiry, the Secretary of State conducts an independent review of the case to determine whether to issue a warrant of surrender. The Secretary exercises broad discretion and may properly consider myriad factors affecting both the individual defendant as well as foreign relations which an extradition magistrate may not.

Martin v. Warden, Atlanta Pen, 993 F.2d 824, 829 (11th Cir. 1993).

First, we are not persuaded by Pajkanovic's claim that the magistrate judge erred in finding that his conviction was not for a political offense. The Treaty provides that:

> A fugitive criminal shall not be surrendered if the offense in respect of which his surrender is demanded be of a political character, or if he proves that the requisition for his surrender has, in fact, been made with a view to try or punish him for an offense of a political character.

> No person surrendered by either of the high contracting parties to the other shall be triable or tried, or be punished, for any political crime or

offense, or for any act connected therewith, committed previously to his extradition.

Treaty, art. VI.

The former Fifth Circuit has defined "a political offense under extradition treaties as an offense committed in the course of and incidental to a violent political disturbance, such as war, revolution and rebellion. An offense is not of a political character simply because it was politically motivated." Escobedo v. United States, 623 F.2d 1098, 1104 (5th Cir. 1980) (citation and footnote omitted).[1] The former Fifth Circuit also has said that a political offense charged under an extradition treaty "must involve an 'uprising' or some other violent political disturbance," that the "act in question must have been incidental to the occurrence in order to justify the exclusion," and that the "status of the offense committed, whether a political offense or not, is to be determined by the circumstances attending the alleged crime at the time of its commission and not by the motives of those who subsequently handle the prosecution." Garcia-Guillern v. United States, 450 F.2d 1189, 1192 (5th Cir. 1971).

Here, Pajkanovic offered no evidence to connect his aggravated robbery to a violent political disturbance. As an initial matter, at the extradition hearing,

---

[1] Under Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we are bound by cases decided by the former Fifth Circuit before October 1, 1981.

Pajkanovic's brother testified that the war in Bosnia and Herzegovina ended in late 1995, and documents showed that Pajkanovic's crime was committed in July 1997. Even if Pajkanovic established that hostilities continued after the war, he offered no evidence to show that his aggravated robbery was incidental to such hostilities. See Escobedo, 623 F.2d at 1104. The decision of the Cantonal Court in Zenica described the robbery, but in no way indicated that it was political in nature. Furthermore, Pajkanovic's brother testified that he did not know the details about Pajkanovic's offense or the victim. Therefore, Pajkanovic has shown no error in the magistrate judge's determination that his offense did not qualify for the political-offense exception to the Treaty. See Treaty, art. VI; Escobedo, 623 F.2d at 1104 (holding that the petitioners were not entitled to a political-offense exception under a treaty with Mexico because they "[did] not contend, and the evidence offered at the extradition hearing [did] not show, that the charges arising out of the alleged attempted kidnapping were committed in the course of and incidental to a violent political disturbance"); Garcia-Guillern, 450 F.2d at 1192.

As for Pajkanovic's claim that the evidence showed that his offense was political in nature because a witness for the prosecution in his aggravated-robbery trial later was convicted of perjury and the victim on his offense was convicted of attempted murder, these facts do not support the conclusion that Pajkanovic's

5

offense was political in nature. Pajkanovic also submits that his offense was political because the trial judge involved in his conviction, who was a Croat, later was removed from the bench. But neither does this establish that his offense was political, and, in any event, the former Fifth Circuit has said that the status of the offense is to be determined by the circumstances of the offense at the time of its commission, not by the motives of those involved in the prosecution. See Garcia-Guillern, 450 F.2d at 1192. Accordingly, Pajkanovic has shown no error in the magistrate judge's denial of his habeas petition on this ground.

We likewise reject Pajkanovic's argument that his offense was not covered by the Treaty because the statute of limitations had run. The Treaty provides that "[e]xtradition shall not be granted, in pursuance of the provisions of this Treaty, if legal proceedings or the enforcement of the penalty for the act committed by the person claimed has become barred by limitation, according to the laws of the country to which the requisition is addressed." Treaty, art. VII. The United States Code provides that "[n]o statute of limitations shall extend to any person fleeing from justice." 18 U.S.C. § 3290.

As Pajkanovic has conceded, the plain language of Article VII of the Treaty refers to the statute of limitations as provided by the laws of the United States, and under those laws, there is no statute of limitations when, as in Pajkanovic's case, a

6

person has fled from justice. See Treaty, art. VII; 18 U.S.C. § 3290. Therefore, Pajkanovic has not shown that the magistrate judge committed any error in determining that his offense was not removed from the Treaty's purview on the ground that the applicable statute of limitations had run.

Moreover, Pajkanovic's argument that reading the Treaty according to its plain language "would render nugatory all treaty provisions that contain limitations on punishments to be determined by the requested state" is unpersuasive. He appears to have overlooked the scenario where the statute of limitations had not yet run in Bosnia and Herzegovina, but had run in the United States. Under that scenario, the language of the Treaty would dictate that the individual would not be subject to extradition, although they would be subject to punishment in the requesting state. See Treaty, art. VII. In any event, given the Treaty's plain language and the limited role of the judiciary in this context, we decline to read language into the Treaty that is not there. See Noriega, 564 F.3d at 1294.[2] For these reasons, Pajkanovic failed to establish that his offense was not covered by the Treaty, and the magistrate judge properly denied his § 2241 petition.

**AFFIRMED.**

---

[2] Instead, Pajkanovic may present his statute-of-limitations argument to the Secretary of State. See Yapp, 26 F.3d at 1568 (noting that the petitioner could address her speedy-trial argument to the Secretary of State, "who exercises much broader discretion in international extradition cases than do the federal courts"); Martin, 993 F.2d at 829.

7