[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 27, 2010
JOHN LEY
CLERK

No. 10-11907
Non-Argument Calendar

_____

D.C. Docket No. 1:09-cv-21504-MGC

TELMO HURTADO HURTADO,

Petitioner-Appellant,

versus

U.S. ATTORNEY GENERAL,
Eric Holder,
U.S. SECRETARY OF STATE,
Hillary Clinton,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 27, 2010)

Before DUBINA, Chief Judge, BARKETT and ANDERSON, Circuit Judges.

PER CURIAM:

Petitioner Telmo Hurtado Hurtado appeals the district court's denial of habeas corpus relief under 28 U.S.C. § 2241 and its earlier issuance of a Certificate of Extraditability pursuant to a valid treaty with Peru. *See* Extradition Treaty with Peru, U.S.-Peru, July 26, 2001, S. Treaty Doc. No. 107-6 ("Extradition Treaty").

On appeal, Hurtado first argues that the implicit language and legislative intent of the applicable treaty barred the extradition of an individual, like him, who was previously acquitted of similar charges in the Requesting State, in this case Peru. Second, he argues that Article 14(7) of the International Covenant of Civil and Political Rights ("ICCPR") bars his extradition on double jeopardy grounds. Third, relying on *Gallina v. Fraser*, 278 F.2d 77, 79 (2d Cir. 1960), Hurtado argues that extraditing him to Peru would be fundamentally unfair, because Peruvian authorities previously acquitted him of similar charges to the ones charged in the United States.[1]

I.

---

[1] We note that Hurtado does not challenge the district court's finding that there was probable cause to establish that he committed the crimes charged and that he could be extradited for the crimes charged. Consequently, these claims are abandoned. *Allstate Ins. Co. v. Swann*, 27 F.3d 1539, 1542 (11th Cir. 1994) (claims not raised in the initial brief on appeal are abandoned).

"On review of a denial of a habeas petition regarding the issuance of a certification of extraditability, we review [the district court's] factual findings for clear error and questions of law de novo." *Noriega v. Pastrana*, 564 F.3d 1290, 1294 (11th Cir. 2009), *cert. denied*, 130 S. Ct. 1002 (2010). The availability of habeas corpus relief under § 2241 is a question of law that we review *de novo*. *Darby v. Hawk-Sawyer*, 405 F.3d 942, 944 (11th Cir. 2005).

Generally, "[t]here is no right to appeal extradition certification determinations, and collateral review of an extradition determination by means of a petition for writ of habeas corpus [under § 2241] is generally limited to determining whether the magistrate had jurisdiction, whether the offense charged is within the treaty and whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty." *Noriega*, 564 F.3d at 1295 (internal quotation marks, ellipses, and citation omitted). However, "[t]he issue of whether the treaty of extradition has no force because another treaty or law prevents its operation" is a fundamental one that is within the class of reviewable challenges to extradition. *Id.* (internal quotation marks omitted); *see also Yapp v. Reno*, 26 F.3d 1562, 1565-66 (11th Cir. 1994) (concluding that the court was still required to interpret a provision of the applicable extradition treaty

regardless of the limited scope of habeas corpus review in extradition proceedings).

"When interpreting a treaty, we begin with the text of the treaty and the context in which the written words are used." *Eastern Airlines, Inc. v. Floyd*, 499 U.S. 530, 534, 111 S. Ct. 1489, 1993, 113 L. Ed. 2d 569 (1991).  If the language of the treaty is clear and unambiguous, our analysis ends there, and we apply the words of the treaty as written.  *United States v. Duarte-Acero*, 208 F.3d 1281, 1285 (11th Cir. 2000) ("*Duarte-Acero I*"); *see also Chan v. Korean Air Lines, Ltd.*, 490 U.S. 122, 135, 109 S. Ct. 1676, 1684, 104 L. Ed. 2d 113 (1989) ("[T]o alter, amend, or add to any treaty, by inserting any clause, whether small or great, important or trivial, would be on our part an usurpation of power, and not an exercise of judicial functions. It would be to make, and not to construe a treaty.").

"[A]lthough treaties are to be liberally construed, [t]his does not mean . . . that treaty provisions are construed broadly.  Rather, this 'liberal' approach to treaty interpretation merely reflects . . . the willingness of courts, *when interpreting difficult or ambiguous treaty provisions*, to look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties." *Duarte-Acero I*, 208 F.3d at 1285 (internal quotation marks omitted) (emphasis added).  A well-established canon of statutory

construction is that the inclusion of a term in one section of a statute implies the intentional exclusion of other terms. *See, e.g.*, *Gozlon-Peretz v. United States*, 498 U.S. 395, 403-404, 111 S. Ct. 840, 846-47, 112 L. Ed. 2d 919 (1991); *United States v. Koonce*, 991 F.2d 693, 698 (11th Cir. 1993).

Article IV of the Extradition Treaty sets forth several specific bases for denying an extradition request, including the mandatory denial of extradition if:

> the person sought has been convicted or acquitted in the Requested State for the offense for which extradition is requested. However, extradition shall not be precluded by the fact that the authorities in the Requested States have decided not to prosecute the person sought for the same acts for which extradition is requested, or to discontinue any criminal proceedings that have been instituted against the person sought for those acts.

Extradition Treaty, art. IV, § 1(a).

Here, as noted by the parties, the Extradition Treaty does not explicitly address the situation where an individual, such as Hurtado, has been acquitted in the Requesting State – Peru, in this case. However, the language of the Extradition Treaty is clear and unambiguous, and the express inclusion of the bar to an individual's extradition where he was acquitted in the Requested State implies the exclusion of other situations, such as when the individual was acquitted in the Requesting State or in a third state. There is no need to look beyond the written words of the text, as Hurtado suggests, because the Extradition

5

Treaty's language is not ambiguous.  As a result, we conclude that the Extradition

Treaty does not bar Hurtado's extradition to Peru.


II.

Article 14(7) of the ICCPR states that "[n]o one shall be liable to be tried or

punished again for an offence for which he has already been finally convicted or

acquitted in accordance with the law and penal procedure of each country."[2]

ICCPR, Dec. 9, 1966, 999 U.N.T.S. 171 (ratified June 8, 1992).

We have previously noted that Article 14(7) bars the successive prosecution

of an individual in the same country.  *Duarte-Acero I*, 208 F.3d at 1286-87

(holding that the provision does not block the prosecution of an individual in

federal courts after he was convicted in a foreign country for the same conduct

alleged in the federal indictment).  However, we also noted that the plain language

of the ICCPR indicates that its provisions govern the relationship between a State

and the individuals within the State's territory, not the relationship between two

sovereign States.  *Id.* at 1286.

Furthermore, the ICCPR does not create judicially-enforceable individual

rights, because the treaty is not self-executing and has not been given effect by

_____

[2] British spelling is used in the original, and retained here.

congressional legislation. *Sosa v. Alvarez-Machain*, 542 U.S. 692, 734-35, 124 S. Ct. 2739, 2767, 159 L. Ed. 2d 718 (2004) (stating that "the United States ratified the [ICCPR] on the express understanding that it was not self-executing and so did not itself create obligations enforceable in the federal courts"); *United States v. Duarte-Acero*, 296 F.3d 1277, 1283 (11th Cir. 2002) ("*Duarte-Acero II*") (noting that Congress had not passed legislation implementing the ICCPR). "Therefore, the ICCPR is not binding on federal courts." *Duarte-Acero II*, 296 F.3d at 1283.

In the present case, Hurtado may use Article 14(7) as a defense before Peruvian courts to prevent his prosecution there, as this provision governs his relationship to that state. However, Article 14(7) is not a basis on which to bar his extradition, because this provision has no effect in federal courts.

### III.

We have recognized the rule of non-inquiry, "which precludes extradition magistrates from assessing the investigative, judicial, and penal systems of foreign nations when reviewing an extradition request." *Martin v. Warden, Atlanta Pen*, 993 F.2d 824, 829 (11th Cir. 1993); *see also United States v. Kin-Hong*, 110 F.3d 103, 110 (1st Cir. 1997) (stating that the non-inquiry rule precludes a court from investigating the fairness of a requesting state's justice system). We have also recognized that the United States may not force treaty partners to adhere to

guarantees afforded by the United States Constitution. *Martin*, 993 F.2d at 830.

In certifying an extradition order, a magistrate is limited to determining whether

there is sufficient evidence to support a charge under the applicable extradition

treaty and does not have the authority to consider other factors, such as

humanitarian considerations or foreign relations, in issuing a certificate of

extraditability. *Id.* at 829-30 & n.10 (noting that because after extradition is

uniquely an executive function only the Secretary of State has the authority to

consider such factors, not the magistrate).

We have expressly rejected the suggestion in *Gallina*, that the rule of non-

inquiry should be displaced when "a defendant faces procedures in a foreign

country 'antipathetic to a federal court's sense of decency.'" *Id.* at 830 n.10

(quoting *Gallina*, 278 F.2d at 79) (also noting that the Second Circuit has more

recently distanced itself from the language in *Gallina*, and that many other courts

have strictly adhered to the rule of non-inquiry). Additionally, we have explicitly

held that "judicial intervention in extradition proceedings based on humanitarian

considerations is inappropriate." *Id.* (citing *Escobedo v. United States*, 623 F.2d

1098, 1107 (5th Cir. 1980)).

Here, because of the limited scope of a magistrate's review concerning

certification of an extradition request, the rule of non-inquiry prevented the

magistrate from inquiring into the fairness of Peru's criminal justice system or denying the certificate based on fundamental fairness. Importantly, we have expressly rejected the *Gallina* suggestion upon which Hurtado relies.

For the aforementioned reasons, we affirm the district court's judgment denying habeas corpus relief.

**AFFIRMED.**